BARTLETT PRESLEY and another *vs.* THOMAS LOWRY, impleaded, etc.

## August 25, 1879.

Contract held not to extinguish a Judgment, but to be merely an Additional Security.—P. & Co. held a judgment against E., which L. had bound himself to pay. Subsequently, P. & Co. and E. entered into a contract, by the terms of which P. & Co. we·e to purchase the interest which the Lake Superior & Mississippi Railroad Company had acquired in a tract of land, through the foreclosure of a mortgage thereon executed by E. for the company's benefit, the period of redemption from such foreclosure not having expired.   The contract contained the proviso that if E. should, at any time within five years from and after its date, pay to P. & Co. the sum paid to the railroad company to effect the purchase, and interest, and also the amount due upon the judgment, pay taxes upon the land, and keep the buildings thereon insured, then P. & Co. should, upon payment of said principal sums and interest, execute and deliver to E. a quitclaim deed of said land.   The contract further provided that, in case E. should neglect to pay interest when due, to keep up insurance, and to pay taxes, then such sums of money should become and be due and payable forthwith, and P. & Co. might thereupon proceed at once by action "to foreclose this contract," and terminate, by final judgment, all estate, right and interest of E. in said land.   The purchase from the railroad company was consummated as provided in the agreement, and the land is still held by P. & Co., as security.   The agreement does not purport to be taken in satisfaction of, or in substitution for, the judgment.   It does not stipulate for any forbearance to enforce or collect the judgment.   No new promise or undertaking with regard to the payment of the judgment, or of the amount of it, or any part of it, is made by E.   *Held,* that, as respects the judgment, the contract is a new security only, and does not operate to merge, satisfy, pay or extinguish the judgment, or to waive any of P. & Co.'s rights to enforce or collect the judgment.

Appeal by defendant Lowry from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial. A former appeal is reported in 25 Minn. 114.

*C. K. Davis*, for appellant.

*W. P. Warner*, for respondents.

BERRY, J. The briefs of counsel contain a very thorough discussion of several points in this case, but we do not deem it necessary in this opinion to consider any, except some which have reference to "Exhibit A." This is the second time that this action has appeared in this court, and, referring to our former opinion in *Presley* v. *Lowry*, 25 Minn. 114, for a fuller statement, it will be sufficient for present purposes to state that the plaintiffs held a judgment against one Erickson for something over $2,000, and that, while they held the judgment, Erickson and defendant Lowry entered into an agreement, one of the terms of which was that Lowry should pay the judgment to the plaintiffs. Upon this term of the agreement the present action is founded. Exhibit A, which is executed by the plaintiffs of the first part, and Erickson of the second part, recites the holding of the judgment above mentioned by the plaintiffs; that they also hold certain bonds in pledge to secure the same; that a certain farm belonging to Erickson has been sold to the Lake Superior & Mississippi Railroad Company, upon foreclosure of a mortgage given by him to William L. Banning, president of said company, from which foreclosure and sale a right of redemption still exists; that Erickson has unadjusted claims against said company, amounting, as he insists, to $4,000; that said company is willing to take $4,000 for its interest acquired under the foreclosure sale, provided Erickson's claims against it are released and satisfied; and that the plaintiffs are willing to advance said sum of $4,000, provided the interest of said company is transferred to the plaintiffs, to be held by them in pledge to secure repayment of the sum so advanced, together with the amount due on said judgment, within five years from the date

hereof, with interest on each, payable annually. The exhibit. then proceeds as follows:

"Now, therefore, it is mutually agreed, by and between said. parties—

"1. That said party of the second part shall. transfer to said party of the first part all his said claims against said railroad company, to be used in purchasing the interest of that company in said farm. Said claims to be retransferred. to said party of the second part, in case such purchase cannot be effected.

"2. Said party of the first part shall purchase the interest: of said railroad company in said farm, if it can be effected at the price of $4,000, and the release of said claims of said party of the second part against that company.

"3. That if said party of the second part, his heirs, legal representatives or assigns, shall, at any time within five years. from and after the date of this bargain, pay to said party of the first part, their legal representatives or assigns, the sums paid to said railroad company to effect such purchase, and. also the amount now due upon such judgment, and shall, also, meanwhile pay and keep down all taxes assessed on such farm, and keep the buildings thereon insured against loss by fire, in such insurance company or companies as said party of the first part may designate, in the sum of at least $5,000, for the benefit and protection of said party of the first part; then said party of the first part shall, upon payment of said principal sums, and interest thereon, as aforesaid, duly execute, acknowledge and deliver to said party of the second. part, or to his heirs or assigns, a good and sufficient quitclaim deed of said farm, with a special covenant of warranty against their own acts.

"4. It is expressly mutually understood and agreed that time shall be considered as of the essence of this contract, and. that, in case said party of the second part, his heirs, legal representatives or assigns, shall neglect to pay. said interest

when due and payable, as aforesaid, or shall neglect to keep up such insurance, or shall neglect to pay such taxes, then such sums of money shall become due and payable forthwith thereafter; and said party of the first part, their heirs, legal representatives or assigns, may thereupon at once proceed, by action, to foreclose this contract, and terminate, by final judgment, all estate, right, title, interest, claim or demand of said party of the second part, his legal representatives or assigns, in, to or upon said farm or any part thereof; and in case a sale thereof shall be directed, then the sum of one hundred dollars shall be allowed and paid out of the proceeds of such sale, as attorney's fees in such suit."

The testimony showed that the purchase from the railroad company was consummated as provided in the exhibit; that the farm was still held as security by the plaintiffs, no steps having been taken to foreclose, as the exhibit permitted; and that Erickson had made some payments of interest; and there was also testimony going to show that these payments were made wholly on account of interest upon the purchase-money paid by plaintiffs to said railroad company, and none of them on account of interest upon the judgment.

The defendant contends that this agreement between Presley & Co. and Erickson is a merger and extinguishment of the judgment—a payment of it by Erickson—and that "Erickson, having paid or arranged to pay it by a different and subsequent security, no obligation rests on Lowry, except to Erickson himself, if at all." Irrespective of these considerations, it is further contended by defendant that by this agreement Presley & Co. waived their right of action upon the judgment, and their right to collect it, for five years from the date of the agreement.

We do not think that the agreement has any such operation or effect. It does not purport to be taken in satisfaction of, or in substitution for, the judgment. It does not stipulate for any forbearance to enforce or collect the judgment, either expressly or by implication. No new promise or undertaking

for the payment of the judgment, or of the amount of it, or of any part of it, is made by Erickson. It is a new security for the judgment, and, except as to some matters not important to be considered here, it is nothing more. Without at all purporting or attempting to impair any existing right of the plaintiffs as respects the judgment, it furnishes this new security, *as to which* it provides that if the amount of the judgment, and other amounts specified, are paid within five years, the security shall be released; or, if interest, etc., is not paid, the plaintiffs may proceed to foreclose, and thus to make the security effectual for the purposes for which it is given. In all this there is nothing tending to show that the agreement of December 23, 1874, in any way merged, satisfied, paid or extinguished, or was intended to merge, satisfy, pay or extinguish the judgment, or that it waived, or was designed to waive, any of the plaintiffs' existing rights to enforce or collect the judgment. We think that the defendant's contention as to the effect and operation of the agreement cannot be maintained, and that the agreement furnishes no answer or defence to the plaintiffs' claim in this action.

Order affirmed.